**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SuperCooler Technologies, Inc.,

               Plaintiff,

          v.                       Case No. 6:23-cv-00187-CEM-RMN

The Coca-Cola Company,

               Defendant.

**THE COCA-COLA COMPANY'S MOTION TO DISQUALIFY THE
PAUL HASTINGS LAW FIRM, BRADLEY BONDI, MICHAEL
WHEATLEY AND VITALIY KATS, AS COUNSEL FOR PLAINTIFF**

**I.    Introduction**

      Large, sophisticated law firms rarely find themselves directly adverse to an existing client.  But that is exactly the situation that Paul Hastings has created here. Paul Hastings represents The Coca-Cola Company ("Coca-Cola") on a number of matters, and simultaneously has decided to take on representation of SuperCooler Technologies, Inc. ("SCTI") in this $100 million contingency-fee case.  Over the last two weeks, Bradley Bondi, Michael Wheatley and Vitaliy Kats ("The Paul Hastings Attorneys"), counsel in the present matter, joined Paul Hastings and brought this lawsuit with them.  Without notifying its client, Coca-Cola, Paul Hastings filed Change of Law Firm notices and sought to add an additional Paul Hastings litigation partner to this case.  Paul Hastings intentionally concealed this conflict, then when asked by Coca-Cola to withdraw as counsel for SCTI to remedy the conflict Paul

4871-9088-5722

Hastings itself created, the firm flatly refused.

Paul Hastings abandoned its ethical obligations in managing this situation. It made no attempt to notify Coca-Cola of the conflict. It made no attempt to request a waiver prior to Coca-Cola discovering this conflict. Instead, once its conduct was discovered, Paul Hastings' response—a response endorsed by its General Counsel, Mark Pollack—was to instruct its Coca-Cola relationship partner to close out all matters if Coca-Cola would not grant a waiver of conflicts in this case.

Understanding that its conduct and General Counsel's instructions violated its ethical obligations to Coca-Cola and contravene Florida's "hot potato rule," Paul Hastings pivoted from its original position. Pointing to an advance waiver provision that was included in an engagement letter for a specific and unrelated matter, Paul Hastings' position now is that Coca-Cola waived the present conflict. Coca-Cola vehemently disagrees. Paul Hastings is attempting to skirt its ethical obligations and justify its representation of a new client in a highly contentious suit against Coca-Cola, while also purporting to zealously defend Coca-Cola's interests in other existing matters.

Pursuant to Local Rule 2.01(d) and Florida Rule of Professional Conduct 4-1.7, Coca-Cola moves to disqualify the Paul Hastings law firm, Bradley Bondi, Michael D. Wheatley, and Vitaliy Kats as counsel for SCTI in this case.

## II.   Factual Background

On February 1, 2023, SCTI filed a 47 page, nine-count Complaint against Coca-Cola alleging, *inter alia*, breach of contract, trade secret misappropriation, and various

related causes of action.  (Doc. 1).  Mr. Bondi, Mr. Wheatley, and Mr. Kats, then at Cahill Gordon & Reindel, each signed the Complaint, along with a fourth attorney from Cahill and an attorney from McIntyre Thanasides Bringgold Elliott Grimaldi Guito & Matthews, P.A.

This is not the first time Coca-Cola has encountered SCTI.  Over the last four years, SCTI has reached out to Coca-Cola with increasingly speculative and outrageous demands, each time with a new firm that they have convinced to take on their case.  Cahill, and now Paul Hastings, are the third and fourth law firms that have represented SCTI in this dispute.  The parties mediated this matter unsuccessfully more than two years ago.  Unhappy that Coca-Cola would not bend to their outrageous demands, and after two years of silence, SCTI found new counsel in Cahill who filed the present lawsuit.

The Complaint in this case is replete with inflammatory and baseless accusations about Coca-Cola's alleged dishonesty and unethical business practices.  It alleges Coca-Cola engaged in "a series of dishonest and deceptive practices" (Doc. 1 at ¶¶ 11, 34), that it "violated the duties of care and loyalty" to its alleged "partner" SCTI (Doc. 1 at ¶¶ 11, 114), that Coca-Cola participated in a "ruse" to defraud and steal the intellectual property of another company (Doc. 1 at ¶ 69), and that Coca-Cola violated its own Code of Business Conduct.  (Doc. 1 at ¶¶ 48, 101).  The Complaint also contains unsubstantiated allegations accusing Coca-Cola executives (including Coca-Cola's Chief Executive Officer) of fraudulent and dishonest conduct.  (Doc. 1 at ¶¶ 44, 54, 73-74, 141).  The Complaint repeats Coca-Cola's alleged lack of "integrity,"

"honesty," and "respect" *ad nauseam.* (*See* Doc, 1 at ¶¶ 48, 101).[1]

Paul Hastings, now counsel of record, believes it is appropriate and permissible for it to be making these allegations against an existing client. The firm has represented Coca-Cola for years, including various sensitive matters with respect to international human rights concerns. Lewis Decl., Aff. A, ¶ 3. SCTI's dispute with Coca-Cola is an obvious conflict that undoubtedly should have been identified months ago during Paul Hastings' interview and onboarding process of the incoming Paul Hastings Attorneys.[2]

Not once did Paul Hastings mention this conflict or request a waiver from Coca-Cola. Instead, correctly assuming that Coca-Cola would never grant a conflict waiver for such a contentious case, the Paul Hastings Attorneys sought to slip this conflict by Coca-Cola without any disclosure of the conflict they created. Coca-Cola was first alerted to this conflict when Paul Hastings had its most junior lawyer involved ask Coca-Cola's outside counsel if there would be any objection to the *pro hac vice* admission of ***another*** Paul Hastings attorney, Jeff Pade. Ex. 6. Paul Hastings did not mention its current representation of Coca-Cola and the conflict Paul Hastings had created, and it did not reach out to any of the in-house Coca-Cola attorneys working on matters with Paul Hastings. Instead, Paul Hastings had an associate make a request to Coca-Cola's outside counsel, who would have had no knowledge of Paul Hastings' representation of Coca-Cola in other matters. Shortly after this request was made, and

---

[1] Coca-Cola vehemently denies the allegations made in SCTI's Complaint.
[2] Coca-Cola received a demand letter from Cahill on behalf of SCTI in early November of 2022.

before receiving any response from Coca-Cola, Paul Hastings unilaterally submitted Notices of Change of Law Firm Association to this Court.

The details of how Coca-Cola learned of this conflict are important and laid out as follows:

**March 27 (afternoon)**: Mr. Kats informed Coca-Cola's outside counsel that he and Mr. Wheatley were now at Paul Hastings, that they had updated their ECF information and would file a Notice of Change of Law Firm Affiliation. Ex. 6.[3] Mr. Kats asked for Coca-Cola's consent on a *pro hac vice* motion for Jeff Pade, a Paul Hastings litigation partner. *Id.* Twenty-four minutes after sending this e-mail, and without having received a response from Coca-Cola, Mr. Kats filed the Change of Law Firm Affiliation. (Doc. 28).

**March 27 (evening)**: Counsel for Coca-Cola informed Mr. Kats that he was not authorized to consent to Paul Hastings' representation of SCTI, and that there might be an issue with the representation. Ex. 7.

**March 28**: In-House Counsel at Coca-Cola, Jessica Lewis, emailed Jon Drimmer, Coca-Cola's relationship partner at Paul Hastings, requesting a call to discuss this conflicts issue. Mr. Drimmer and Ms. Lewis spoke and Mr. Drimmer was seemingly unaware of this conflict. Lewis Decl., Aff. A, ¶ 7. Ms. Lewis made clear that Coca-Cola considered the situation a conflict and would not be granting a waiver. Mr. Drimmer agreed that Coca-Cola should not waive conflicts and rhetorically

---

[3] At this point, Coca-Cola was still unaware that Mr. Bondi would move to Paul Hastings within the next few days.

questioned, "why would you?" *Id.* Less than thirty minutes later, Mr. Drimmer asked Ms. Lewis to call him. On this second call, Mr. Drimmer said he had spoken with the firm's General Counsel, Mark Pollack, who told Mr. Drimmer that if Coca-Cola would not grant Paul Hastings a waiver, Mr. Drimmer had been told to close all Coca-Cola matters. *Id.*, ¶ 8. Disappointed by this response, Ms. Lewis expressed her dismay that Paul Hastings would effectively "fire" an existing client to represent SCTI. Mr. Drimmer expressed his surprise as well, and further noted his surprise that Paul Hastings would take on such a contingency-fee type case. *Id.* Ms. Lewis followed up these phone calls with an email confirming Coca-Cola's position that no waiver was being granted, and requesting that Paul Hastings withdraw from the SCTI lawsuit. Ex. 2. Later that evening, Mr. Drimmer requested another call. On this third call, Mr. Drimmer informed Coca-Cola that Paul Hastings would be relying on a previous engagement letter that included an advance waiver in taking the position that Coca-Cola had waived the present conflict. Lewis Decl., Aff. A, ¶ 10. At Ms. Lewis' request, Mr. Drimmer provided her with a copy of the engagement letter. Ex. 3.

A previously-scheduled meet and confer regarding the parties' Case Management Report also occurred on March 28. By this point, Coca-Cola had notified Paul Hastings of its position that a conflict existed and no waiver had been granted. Nevertheless, Mr. Kats and Mr. Wheatley, now at Paul Hastings, dialed into that call. Counsel for Coca-Cola again stated Coca-Cola's position that Paul Hastings' representation of SCTI is an active conflict, and that Coca-Cola's counsel would not continue with the meet-and-confer with Paul Hastings lawyers on the line. Mr.

Wheatley and Mr. Kats exited the call.  Garretson Decl., Aff. B, ¶ 7.  Mr. Bondi proceeded to conduct the meet and confer with Coca-Cola's counsel—failing to mention that he too would be joining Paul Hastings within the next few days.

**March 29**:   Still unaware that Mr. Bondi was moving to Paul Hastings, Coca-Cola had another meet-and-confer with Mr. Bondi and continued to correspond via email regarding the Joint Case Management Report (Doc. 29), Coca-Cola's Motion to Compel Arbitration (Doc. 32) and Motion to Dismiss (Doc. 33).  Garretson Decl., Aff. B, ¶ 8.  At no point did the Paul Hastings Lawyers, Mr. Bondi, or Paul Hastings through its Coca-Cola relationship partner or General Counsel disclose that Mr. Bondi was also moving to Paul Hastings and intended to continue his representation of SCTI.  *Id.*

**March 31**: Ms. Lewis again confirmed by email that Coca-Cola viewed Paul Hastings' involvement as a conflict, and explained that Coca-Cola disagreed that a two-year-old engagement letter on an unrelated issue, containing no client-specific or subject matter information, constituted informed consent, consultation, or waiver of the conflict.  Ex. 2.[4]  Paul Hastings' General Counsel, Mark Pollack, contacted Ms. Lewis directly in response and reiterated Paul Hastings' position that the March 2021 engagement letter between Paul Hastings and Coca-Cola represented a waiver of all

---

[4]  Indeed, Coca-Cola's outside counsel guidelines explicitly state that Coca-Cola does *not* grant advance conflict waivers, and that the Company insists upon full prior disclosure and prior written approval of any actual or potential conflict of interest.  If a waiver *is* to be granted in such limited, *full disclosure* circumstances, the guidelines further state that the waiver must first be approved by the Chief Legal Officer & General Counsel or the Chief Litigation Counsel of Coca-Cola.  Lewis Decl., Aff. A, ¶ 5.  Coca-Cola provides these guidelines to all of its outside legal vendors, including Paul Hastings, as part of its billing and invoicing platform.

future conflicts, and stated that Mr. Wheatley and Mr. Kats would not withdraw from their representation of SCTI.  Ex. 4.

**April 3**: Coca-Cola's Senior Vice President and General Counsel, Monica Howard Douglas, reached out to William K. Whitner (Paul Hastings' Global Vice-Chair of Litigation), Sherrese Smith (Paul Hastings' Managing Partner), and Mr. Pollack again requesting that Paul Hastings withdraw as counsel.  Mr. Pollack responded on behalf of Paul Hastings, reiterating the firm's position.  Ex. 5.  This same day, Coca-Cola learned that Mr. Bondi had also moved to Paul Hastings through a Law360 article.  No one at Paul Hastings, including Mr. Pollack, mentioned this further conflict to Coca-Cola.  Ex. 8; Garretson Decl., Aff. B, ¶¶ 8-9.

**April 5**: Mr. Bondi unilaterally submitted his own Notice of Change of Law Firm Affiliation to this Court.  (Doc. 35).

This presents an extraordinary circumstance.  Paul Hastings now claims it can continue to represent Coca-Cola in its existing matters, while simultaneously pursuing a purported $100 million lawsuit against its own client.  Paul Hastings knew Coca-Cola would never voluntarily consent to such a representation and deliberately did not inform Coca-Cola of the conflict, nor try to obtain informed consent.  Instead, shockingly, Paul Hastings *withheld* information about the conflict.  It clandestinely sought and received a waiver from SCTI, had its attorneys file unilateral notices with this Court, and further had those attorneys contact Coca-Cola's outside counsel to seek consent for the *pro hac vice* admission of yet another Paul Hastings attorney.

Paul Hastings should not be permitted to profit from this duplicitous and

fundamental violation of its duty of loyalty to Coca-Cola, and its lack of candor with its own client.

## III.    Legal Standard

Although they implicate ethical concerns, "motions to disqualify are substantive motions affecting the rights of the parties." *Herrmann v. GutterGuard*, Inc., 199 F. App'x 745, 752 (11th Cir. 2006).  Disqualification motions are governed by two sources of authority—federal common law and local rules of the court.  *Id.*  The party moving to disqualify counsel bears the burden of proving the grounds for disqualification.  *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003).  The Local Rules of this Court incorporate the Florida Rules of Professional Conduct.  M.D. Fla. L.R. 2.01(d).

Florida Rule of Professional Conduct 4-1.7 precludes attorneys from representing two parties if the representation of one client will be directly adverse to another client unless, among other things, "each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing."  Fla. R.P.C. 4-1.7(b)(4).[5]  In the context of corporate clients, "a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer's relationship

---

[5] The Florida Rules of Professional Conduct consider a representation to be "directly adverse" to a client where a lawyer "act[s] as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated." Fla. R.P.C. 4-1.7 cmt.  This adversity is not limited solely to the individual lawyers appearing on a particular matter. Under the Rules, no lawyer associated in a firm "may knowingly represent a client where any one of them practicing alone would be prohibited from doing so" by Rule 4-1.7.  Fla. R.P.C. 4-1.10(a).

with the enterprise or conduct of the suit and if both clients consent upon consultation." Fla. R.P.C. 4-1.7 (official comments). The rules further define informed consent as the "agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Fla. R.P.C. 4 (preamble).

A court may disqualify an attorney for ethical violations based on their local rules and federal common law. *Hermann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006). While a "harsh sanction," courts may disqualify counsel where there are "compelling reasons" to do so. *Id.* (quoting *In re: BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir.2003). Violation of an applicable rule of professional conduct is a compelling reason to deny a client counsel of its choice. *See Miccosukee Tribe of Indians of Fla. v. Cypress*, 686 F. App'x 823, 825-26 (11th Cir. 2017); *McGriff v. Christie*, 477 F. App'x 673, 677-79 (11th Cir. 2012); *Herrmann*, 199 F. App'x at 747, 755-57.

Once an ethical violation is found, courts apply a number of factors to determine whether to disqualify: "the nature of the ethical violation, the age of the action, the prejudice to the parties, the effectiveness of counsel in light of the violation, the public's perception of the profession, and whether the attempt to disqualify is a tactical [device] or a means of harassment." *Chammami v. Acropolis Mediterranean Food Inc. et al.*, No. 8:19-cv-01459-CEH-SPF, 2020 WL 13119546, at *9 (M.D. Fla. Aug. 18, 2020) (M. D. Fl., 2019) (*citing Keane v. Jacksonville Police Fire & Pension Fund Board of Trustees*, 2017 WL 4102302, at *5 (M.D. Fla. 2017)).

4871-9088-5722

## IV.     Analysis

### A. The Paul Hastings Attorneys' conduct was an ethical violation under Rule 4-1.7.

Mr. Bondi, Mr. Wheatley, and Mr. Kats violated Rule 4-1.7 of the Florida Rules of Professional Conduct when they chose to represent SCTI against Coca-Cola.  Their new firm, Paul Hastings, maintains open and active matters with Coca-Cola, matters that would have been revealed in any conflicts search.  Rule 4-1.7 is unambiguous.  A lawyer must not represent a client if the representation of one client is directly adverse to another client.  Fla. R.P.C. 4-1.7(a)(1).  These rules are in place to protect clients from lawyers seeking to benefit by playing both sides of the field for monetary or personal reasons.  *See* Fla. R.P.C. 4-1.7 cmt.  ("The lawyer's own interests should not be permitted to have adverse effect on representation of a client.").

Compliance with Rule 4-1.7(b) prohibits Paul Hastings from representing SCTI unless Paul Hastings sought and received a waiver from Coca-Cola.  This waiver can only come, as specified by the rule, after informed consent, which requires communication of "adequate information" and "explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."  Fla. R.P.C. 4-1.7(b)(4); Fl. R.P.C. 4 (preamble).  Not only was no adequate information or explanation of the material risk shared with Coca-Cola, Paul Hastings made no attempt to reach out to Coca-Cola to notify it of this conflict, provide information about the conflict, or propose any reasonable resolution.  It was only after Coca-Cola independently learned of the conflict that Paul Hastings belatedly took the position

4871-9088-5722

that Coca-Cola must waive the conflict or face the loss of the firm's counsel in the middle of sensitive ongoing matters.

Coca-Cola has not waived this conflict or given informed consent to Paul Hastings' representation of SCTI.   Accordingly, Paul Hastings' continued representation of SCTI is a conflict and an ethical violation.

### a. The purported advance waiver does not excuse the Paul Hastings Attorneys from their ethical obligation to comply with Rule 4-1.7.

Understanding that they made a mistake in taking on the representation of SCTI without informing Coca-Cola of this conflict or seeking a waiver, Paul Hastings now contends that Coca-Cola gave "informed consent" through a 2021 engagement letter on a separate matter, which included an advance waiver provision buried in a boilerplate attachment to the letter.  Their reliance on this provision is improper.  As detailed below, case law in the Eleventh Circuit, in a nearly identical situation, found that such a waiver was unenforceable.

In *S. Visions, LLP v. Red Diamond, Inc.*, the court considered the enforceability of an advance waiver provision included in an attorney engagement letter.  370 F. Supp. 3d 1314 (N.D. Ala. 2019).  There, a law firm represented a company in various matters.  That same law firm then accepted representation in a large case *against* the company without consulting the company or requesting a waiver.  Similar to Paul Hastings here, the law firm in *Red Diamond* relied on a broadly-worded advance waiver provision in a prior engagement letter to justify its representation in that case without a waiver.  *Red Diamond*, 370 F. Supp. 3d at 1319.

12

The *Red Diamond* court found that the law firm could not satisfy its obligation to obtain informed consent from their client for the conflict under Alabama Rule of Professional Conduct 1.7(a) (a rule analogous to Florida Rule 4-1.7(a)) by relying on an advance waiver the client signed years ago in an unrelated matter. *Id.* at 1319. The court reasoned that if an advance waiver was truly intended to permit a law firm to later sue a current client on behalf of another, there must be "clear evidence of such intent." *Id.* at 1326. In addition, the court explained that "a court will not lightly conclude that a client's advance conflict waiver was truly intended to permit the law firm to later sue that current client on behalf of another," and that "it is highly unlikely a client would knowingly and voluntarily consent in advance to such a conflict." *Id.* at 1325-26. This was true even though the client was a "sophisticated consumer of legal services." *Id.* at 1326. The *Red Diamond* court also held that even if the advance waiver *were* to constitute informed consent, the client had revoked that consent when its CEO asked the law firm not to accept the representation. *Id.* at 1321-22.

Courts around the country have agreed with this approach, holding that general, open-ended advance waivers, like the one at issue here, do not provide "informed" consent because they do not provide the signer with adequate information to evaluate the conflict. *See, e.g., Worldspan, L.P. v. Sabre Grp. Holdings, Inc.*, 5 F.Supp.2d 1356, 1360 (N.D. Ga. 1998) (a waiver allowing a lawyer to litigate against his own client must include "reference to specific parties, the circumstances under which such adverse representation would be undertaken, and all relevant like information."); *W. Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F.Supp.3d 1074, 1083-

84 (C.D. Cal. 2015) (holding ineffective an "open-ended" conflict waiver signed by a sophisticated client that: (1) purported to indefinitely waive conflicts in any matter not substantially related, and (2) did not identify a potentially adverse client, the types of potential conflicts, or the nature of the potential future representations); *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1118 (E.D. Cal. 2015) (advance waiver was unenforceable as it insufficiently disclosed the nature of a subsequent conflict). The American Bar Association has also commented on advance waivers, stating that "[i]f the consent is general and open-ended, then the consent ordinarily will be ineffective, because it is not reasonably likely that the client will have understood the material risks involved." *Informed Consent to Future Conflicts of Interest; Withdrawal of Formal Opinion 93-372*, ABA Formal Op. 05-436. The Paul Hastings engagement letter is as "general and open-ended" as it gets, covering matters of all types, with no time limit. Ex. 3 at 9.

Paul Hastings knew that Coca-Cola did not intend for every potential future conflict to be waived in perpetuity. Coca-Cola's own outside counsel guidelines, which are provided on Coca-Cola's billing platform for Paul Hastings and other vendors, expressly state that Coca-Cola does *not* grant advance waivers, and that it "insists upon full prior disclosure and prior written approval of any actual or potential conflict of interest." Lewis Decl., Aff. A, ¶ 5. Under all these circumstances—and in a situation where Paul Hastings was being asked to sue its own, established client for $100 million *with a direct stake in the outcome*—it was unreasonable for Paul Hastings to conclude that no notice, detailed disclosure, or informed consent were required.

14

**b. Paul Hastings' representation of SCTI negatively impacts its relationship with Coca-Cola.**

Rule 4-1.7(a) prohibits an attorney from accepting adverse representation where there is a substantial risk the representation of one client will be materially limited by the lawyer's responsibilities to another client. Fla. R.P.C. 4-1.7(a)(2). This is because "loyalty and independent judgment are essential elements in the lawyer's relationship with a client." Fla. R.P.C. 4-1.7 cmt. The standard under the Rules of Professional Conduct is whether a "disinterested lawyer would conclude that the client should not agree to the representation under the circumstances." Fla. R.P.C. 4-1.7, cmt.

Neither Paul Hastings nor the Paul Hastings Attorneys could have reasonably believed that the firm's representation of SCTI would not adversely affect its attorney-client relationship with Coca-Cola, materially limiting Paul Hastings' ability to represent the Company. This matter has an especially long and contentious history: SCTI approached Coca-Cola three separate times with three separate law firms over the last four years. After two years of silence, SCTI found its current lawyers to send Coca-Cola yet another inflammatory demand letter in 2022 and to file the present lawsuit in February 2023. No attorney-client relationship could withstand the allegations in this case, allegations of "dishonest and deceptive practices," and a lack of "integrity."

The pending case alleges damages of over $100 million. No disinterested lawyer would advise Coca-Cola to waive conflicts and allow Paul Hastings to pursue such a highly-charged, volatile case against it while simultaneously relying on Paul

4871-9088-5722

Hastings to advocate on its behalf in sensitive matters.  In fact, one of Paul Hastings' *own partners* told Coca-Cola that it should not grant a waiver, when discussing the issue with Coca-Cola's in-house counsel.  Lewis Decl., Aff. A, ¶ 7.

### c. Paul Hastings' conduct violates the "hot potato" rule.

The "hot potato rule," adopted by Florida courts, dictates that "[a]ttorneys may not avoid [Rule 4-1.7] by taking on representation in which a conflict of interest already exists and then convert a current client into a former client by withdrawing from the client's case."  *Young v. Achenbauch*, 136 So. 3d 575, 581 (Fla. 2014); *see also Lanard Toys Ltd. V. Dolgencorp LLC*, No. 3:15-CV-849-J-34PDB, 2016 WL 7326855, at *8 (M.D. Fla. Dec. 16, 2016).  When Paul Hastings told its Coca-Cola relationship partner to close his matters for Coca-Cola if Coca-Cola would not grant a waiver, it violated the "hot potato rule."  Lewis Decl., Aff. A, ¶ 8.  Firing Coca-Cola so it could take on a new representation against Coca-Cola on behalf of SCTI is an ethical violation.  In Paul Hastings' haste to ensure it could keep its new lateral attorneys' lawsuit, it violated its ethical obligations to Coca-Cola.  While Paul Hastings' General Counsel Mr. Pollack made no mention of this directive in his email communications, the directive was relayed to Coca-Cola, and a client should feel comfortable that its lawyers will not simply turn around and sue them when the opportunity for a larger payout arises.

4871-9088-5722

**B. The balance weighs in favor of disqualification of the Paul Hastings Attorneys in light of this continuing ethical violation.**

When considering whether disqualification for an ethical violation is warranted, courts apply a balancing test, weighing several factors, including, "the nature of the ethical violation, the age of the action, the prejudice to the parties, the effectiveness of counsel in light of the violation, the public's perception of the profession, and whether the attempt to disqualify is a tactical or a means of harassment." *Chammami*, 2020 WL 13119546, at *9. Each of these factors weigh in favor of disqualifying Paul Hastings and its lawyers.

As an initial matter, Paul Hastings' conduct after hearing that Coca-Cola would not grant a waiver of conflicts in this case is a direct violation the "hot potato rule." A law firm cannot drop an existing client in order to avoid a conflict of interest dilemma regarding representation of a new client. *See, e.g.*, *Young*, 136 So. 3d at 581.

Paul Hastings belatedly attempts to justify its conduct by arguing that the previous engagement letter permits it to represent Coca-Cola in highly sensitive legal matters, while simultaneously suing Coca-Cola for $100 million. This is absurd. While Coca-Cola vehemently disagrees that the claims in this case have any merit whatsoever, should SCTI be successful, Paul Hastings stands to gain significant financial benefit from Coca-Cola's loss. Because this appears to be a contingency case, Coca-Cola will effectively be making a payment *directly to Paul Hastings* if it loses.[6]

---

[6] That this matter appears to have been taken by Paul Hastings on a contingency fee basis is not dispositive of the conflict. Even if a more traditional fee arrangement were in place, Paul Hastings would still be directly adverse to an existing client, and would still have a financial interest in this

Coca-Cola is in an especially precarious position as a result of Paul Hastings' conduct in this case. Paul Hastings represents Coca-Cola in delicate international human rights matters which have the potential to cause significant reputational harm to Coca-Cola if mishandled. But Paul Hastings now has a direct, vested financial interest in *disparaging* Coca-Cola's reputation to support the inflammatory accusations made in SCTI's Complaint. It is simply not possible to trust Paul Hastings to advocate effectively for Coca-Cola in the other matters it is handling given this blatant conflict of interest.

This is especially true given the lack of judgment and candor Paul Hastings has shown in attempting to resolve this matter with Coca-Cola. Allowing Paul Hastings to unilaterally end its attorney-client relationship with Coca-Cola order to pursue this case—either by effectively forcing Coca-Cola to terminate the firm's representation or by terminating the representation itself—will erode public trust in the profession. *Chammami*, 2020 WL 13119546, at *8 (disqualification is warranted where conduct "perpetuates the public perception of attorneys as self-interested to the detriment of their clients. This is no small factor."). To state the obvious, this is not disqualification sought for "tactical" or harassing reasons. *Id.* at *9. The issue here goes to the very heart of the lawyer-client relationship, and the public's expectation that lawyers are required to behave ethically. Moreover, this case is newly-filed and is in the earliest stages of litigation. This Court has not yet ruled on Coca-Cola's initial motions, and

---

continued litigation against an existing client, in what is certain to be a hotly contested and protracted dispute.

4871-9088-5722

no discovery has yet been taken.  The age of this case thus also weighs in Coca-Cola's favor.

Finally, SCTI will not be significantly prejudiced if Paul Hastings is disqualified.  The law firms of Cahill Gordon & Reindel LLP and McIntyre Thanasides filed the complaint against Coca-Cola in this case.  If the Paul Hastings Attorneys are disqualified, SCTI will continue to be represented by partners Michael B. Weiss of Cahill Gordon and Paul Thanasides of McIntyre Thanasides.  Mr. Weiss drafted SCTI's 14-page demand letter to Coca-Cola before this litigation started, and clearly has deep familiarity with SCTI's claims.

In weighing the equities, the cause of the conflict weighs strongly in Coca-Cola's favor.  Paul Hastings created this conflict by its own actions.  As emphasized in the *Red Diamond* decision, whether or not the law firm created the concurrent conflict by its own actions is an important factor in assessing the proper outcome.  *Red Diamond*, 370 F.Supp.3d at 1329, 1335, 1338.  Paul Hastings intentionally, and with full knowledge of its existing matters for Coca-Cola, chose to undertake the SCTI representation without seeking specific, informed consent from Coca-Cola, or consulting in any way with its long-time client.  Paul Hastings' conduct is egregious and would be insulting to any client.  But more importantly, it violates Paul Hastings' ethical duties to Coca-Cola.

## V.   Conclusion

Coca-Cola respectfully requests that this Court exercise its discretion to disqualify the law firm of Paul Hastings LLP, Bradley Bondi, Michael D. Wheatley,

and Vitaliy Kats from representing SCTI in this case.

## Local Rule 3.01(g) Certification

Counsel for Defendant conferred with Counsel for Plaintiff regarding the relief sought in this motion, and Plaintiff opposes this motion.

Respectfully submitted,

*/s/ Anitra Raiford Clement*
Anitra Raiford Clement
SHOOK, HARDY & BACON LLP
100 N. Tampa St., Suite 2900
Tampa, Florida 33602
T: 813-202-7100 | F: 813-221-8837
aclement@shb.com

B. Trent Webb (*Pro hac vice*)
John Garretson (*Pro hac vice*)
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
T: 816.474.6550 | F: 816.421.5547
bwebb@shb.com
jgarretson@shb.com

Amelia Murray (*Pro hac vice*)
SHOOK, HARDY & BACON LLP
111 S. Wacker Dr., Suite 4700
Chicago, IL 60606
T: (312) 704-7700
aemurray@shb.com

***Attorneys for The Coca-Cola Company***

4871-9088-5722

# AFFIDAVIT A

# Declaration of Jessica Lewis

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SuperCooler Technologies, Inc.,

                Plaintiff,

             v.

The Coca-Cola Company,

                Defendant.

Case No. 6:23-cv-00187-CEM-RMN

**DECLARATION OF JESSICA LEWIS IN SUPPORT OF**
**THE COCA-COLA COMPANY'S MOTION TO DISQUALIFY**

I, Jessica Lewis, declare and state as follows:

1.     I am a member in good standing of the bar of the State of Georgia and am admitted to practice before all courts in that state.  I am in-house counsel for The Coca-Cola Company ("Coca-Cola") and hold the position of Senior Legal Counsel, Head of Litigation.

2.     I make this declaration in support of The Coca-Cola Company's Motion to Disqualify the Paul Hastings Law Firm ("Paul Hastings"), Bradley Bondi, Michael D. Wheatley and Vitaliy Kats as counsel for Plaintiff SuperCooler Technologies, Inc. ("SCTI").  I have knowledge of the matters set forth herein, either as a direct participant in the matters described, or in my capacity as one of the attorneys responsible for the handling of legal matters within The Coca-Cola Company.

3.     Paul Hastings currently represents Coca-Cola on various matters.  These

1

include sensitive international human rights matters of great importance to Coca-Cola. Paul Hastings is essential to the disposition of these matters.

4.      Coca-Cola's outside counsel guidelines are provided in its billing system for outside vendors, including Paul Hastings.  Coca-Cola has received invoices for legal services from Paul Hastings as recently as the week of March 22, 2023.

5.      Coca-Cola's outside counsel guidelines state that the "Company does not grant advance waivers and insists upon full prior disclosure and prior written approval of any actual or potential conflict of interest, including (a) representation of any adverse party in any matter against the Company (including wholly and majority-owned subsidiaries), however unrelated it may seem," and that "[i]n the limited circumstances in which waivers are granted, they must be first approved by the Chief Legal Officer & General Counsel or Chief Litigation Counsel."

6.      On March 27, 2023, I learned that two attorneys, Michael Wheatley and Vitaliy Kats, attorneys for SCTI in the above-captioned case, left Cahill Gordon & Reindel LLP to join Paul Hastings, and communicated to Coca-Cola's counsel that they intended to continue their representation of SCTI at Paul Hastings.

7.      On March 28, 2023, I emailed my primary contact at Paul Hastings, Jon Drimmer, to ask if we could speak.  A true and correct copy of this email chain is attached hereto as Exhibit 1.  When we spoke, it seemed that Mr. Drimmer was unaware of this conflict.  I informed Mr. Drimmer that Coca-Cola would not be granting a waiver for this conflict.  Mr. Drimmer agreed that Coca-Cola should not waive this conflict and rhetorically questioned, "why would you?"

2

8.      Less than thirty minutes later, Mr. Drimmer asked me to call him.  On this second call, Mr. Drimmer said he had spoken with the firm's General Counsel, Mark Pollack, who told Mr. Drimmer that if that if Coca-Cola would not grant Paul Hastings a waiver, Mr. Drimmer should close all Coca-Cola matters.  I expressed my dismay that Paul Hastings would effectively "fire" Coca-Cola, an existing client, to take on representation of SCTI.  Mr. Drimmer also expressed his surprise and further noted his surprise that Paul Hastings would take on such a contingency-fee type case.

9.      At 4:50 pm, I emailed Mr. Drimmer, confirming Coca-Cola's position that no waiver was being granted and again requesting that Paul Hastings withdraw from representing SCTI in this case.  Mr. Drimmer e-mailed me at 5:31 pm asking if I had time to discuss.  A true and correct copy of this email chain is attached hereto as Exhibit 2.

10.     When Mr. Drimmer and I spoke for the third time, he stated that Paul Hastings would be taking the position that Coca-Cola had already waived the present conflict, relying on a previous engagement letter from March 2021 that included an advance waiver provision.  At my request, Mr. Drimmer provided a copy of the engagement letter.  A true and correct copy of the engagement letter is attached hereto as Exhibit 3.

11.     On March 31, I again confirmed to Mr. Drimmer that Coca-Cola does not consent to Paul Hastings' representation of SCTI and asked again that Michael D. Wheatley and Vitaliy Kats withdraw from this case.  Ex. 2.

12.     I received an email response on March 31 from the General Counsel of

Paul Hastings, Mark Pollack.  A true and correct copy of the email is attached hereto as Exhibit 4.

13.     On April 3, I was copied on an e-mail from Coca-Cola's Senior Vice President, Monica Howard Douglas, to partners Sherrese Smith and William Whitner at Paul Hastings, copying Mark Pollack, expressing disappointment that Paul Hastings attorneys were representing SCTI in a lawsuit filed against Coca-Cola without a requested or granted waiver of conflicts.  Coca-Cola again requested that the Paul Hastings attorneys withdraw from the lawsuit.  A true and correct copy of the email chain is attached hereto as Exhibit 5.

14.     On April 4, Mark Pollack responded to Monica Howard Douglas' email, stating that Paul Hastings' attorneys would not withdraw from this case.  Ex. 5.

I declare under penalty of perjury that the foregoing is true and correct.  This declaration was executed within the United States on April 12, 2023.

_____

Jessica Lewis

# AFFIDAVIT B

# Declaration of John Garretson

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

|  |  |
|---|---|
| SuperCooler Technologies, Inc., | |
| Plaintiff, | |
| v. | Case No. 6:23-cv-00187-CEM-RMN |
| The Coca-Cola Company, | |
| Defendant. | |

### DECLARATION OF JOHN D. GARRETSON IN SUPPORT OF THE COCA-COLA COMPANY'S MOTION TO DISQUALIFY

I, John D. Garretson, declare and state as follows:

1.      I am a member in good standing of the Bar of the States of Missouri and New York, and I am admitted to practice before the U.S. District Courts for the Western District of Missouri, Eastern District of Missouri, District of Kansas, Eastern District of New York, and Southern District of New York.  I am admitted before this court *pro hac vice*.  I am a partner with the law firm Shook, Hardy & Bacon, LLP.  I am outside counsel in this case representing the Defendant, The Coca-Cola Company ("Coca-Cola").

2.      I make this declaration in support of Coca-Cola's Motion to Disqualify the Paul Hastings Law Firm ("Paul Hastings"), Bradley Bondi, Michael D. Wheatley and Vitaliy Kats as counsel for Plaintiff SuperCooler Technologies, Inc. ("SCTI").  I have knowledge of the matters set forth herein as a direct participant in the matters described.  If called and sworn as a witness, I could and would competently testify to

the matters I set forth below.

3.      Plaintiff filed its Complaint against Coca-Cola on February 1, 2023.  At that time, the Complaint reflected that Bradley Bondi, Michael D. Wheatley, and Vitaliy Kats all worked at the law firm of Cahill, Gordon & Reindel LLP.

4.      On March 27, 2023 at 3:07pm Central Time, Vitaliy Kats contacted me by email to inform me that he and Michael Wheatley had changed law firms. Mr. Kats indicated that he and Mr. Wheatley intended to continue representation of SCTI at their new firm, Paul Hastings, and would file a corresponding notice with the Court. Mr. Kats also asked if Coca-Cola would oppose a motion for *pro hac vice* admission of Jeff Pade, a partner at Paul Hastings.  A true and correct copy of this email is attached hereto as Exhibit 6.

5.      On March 27, 2023 at 3:31pm Central Time, Mr. Wheatley and Mr. Kats filed a Notice of Change of Law Firm Affiliation with this Court, indicating their move to Paul Hastings.  Doc. 28.

6.      Upon receiving Mr. Kats' email and the Notice of Change of Law Firm Affiliation, I informed in-house counsel at Coca-Cola.  On March 27, 2023 at 8:26pm Central Time, I replied to Mr. Kats by email, stating that I was not authorized to consent to the motion to admit Jeff Pade *pro hac vice*, and that there might be an issue regarding Paul Hastings' representation of SCTI.  A true and correct copy of this email is attached hereto as Exhibit 7.

7.      On March 28, 2023, I participated in a meet-and-confer teleconference with counsel for SCTI, along with Anitra Clement and Amelia Murray of Shook,

Hardy & Bacon.  Mr. Kats and Mr. Wheatley joined the call.  I informed counsel for SCTI that because there was an active conflict of interest between Paul Hastings and Coca-Cola, I could not proceed with the meet-and-confer with Mr. Wheatley and Mr. Kats on the line.  Mr. Kats and Mr. Wheatley then left the call.  The  meet-and-confer continued with Bradley Bondi and Paul Thanasides representing SCTI.

8.      I and other lawyers representing Coca-Cola at Shook, Hardy & Bacon continued to communicate with Mr. Bondi and Mr. Thanasides throughout the week of March 26 regarding this case, in connection with the parties' Joint Case Management Report filed on March 29, 2023, as well as other filings by Coca-Cola that week.  At no time during these interactions did counsel for SCTI disclose that Mr. Bondi was in the process of joining, or had joined, Paul Hastings.

9.      Late on April 3, 2023, I learned through public reporting by Law360 that Mr. Bondi had also joined the firm of Paul Hastings.  A true and correct copy of Rodgers, Jack, *Paul Hastings Adds Cahill Gordon Atty to White Collar Group*, LAW360, April 3rd, 2023 is attached hereto as Exhibit 8.


I declare under penalty of perjury that the foregoing is true and correct.  This declaration was executed within the United States on April 12, 2023.


_____

John D. Garretson

3

# Exhibit 1

**Jessica Lewis**

---

| | |
|---|---|
| **From:** | Drimmer, Jon <jondrimmer@paulhastings.com> |
| **Sent:** | Tuesday, March 28, 2023 12:13 PM |
| **To:** | Jessica Lewis |
| **Subject:** | Re:   Quick Call This Morning? |

Have a minute?

Sent from my iPhone

> On Mar 28, 2023, at 10:47 AM, Jessica Lewis <jeslewis@coca-cola.com> wrote:
>
>
>
>
>
> --- External Email ---
>
>
>
>
>
>
> Oh wow! Sorry to interrupt.  I've got an 11 and will call you right after.
>
>
>
>
> Classified - Confidential
>
> -----Original Message-----
> From: Drimmer, Jon <jondrimmer@paulhastings.com>
> Sent: Tuesday, March 28, 2023 10:45 AM
> To: Jessica Lewis <jeslewis@coca-cola.com>
> Subject: Re: Quick Call This Morning?
>
> ATTENTION: This email was sent from outside the company. Do not click links or open files unless you know it is safe.
Forward malicious emails to phish@coca-cola.com.
>
>
> Sure. I'm at the US summit for democracy but can step out at any time.
>
> Sent from my iPhone
>
> On Mar 28, 2023, at 10:43 AM, Jessica Lewis <jeslewis@coca-cola.com> wrote:
>
>
>
> --- External Email ---

> Hi Jon. Do you have time for a quick call on a conflicts/administrative question?
>
> Thanks,
>
> Jessica
>
> <image001.png>
>
>
>
> Classified - Confidential
>
> _____
>
> CONFIDENTIALITY NOTICE
> NOTICE: This message is intended for the use of the individual or entity to which it is addressed and may contain information that is confidential, privileged and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any printing, copying, dissemination, distribution, disclosure or forwarding of this communication is strictly prohibited. If you have received this communication in error, please contact the sender immediately and delete it from your system. Thank You.
>
>
> *********************************************************************
> ******************** This message is sent by a law firm and may
> contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.
> If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address.  For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.
>
> _____
>
> CONFIDENTIALITY NOTICE
> NOTICE: This message is intended for the use of the individual or entity to which it is addressed and may contain information that is confidential, privileged and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any printing, copying, dissemination, distribution, disclosure or forwarding of this communication is strictly prohibited. If you have received this communication in error, please contact the sender immediately and delete it from your system. Thank You.


*********************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.
If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address.  For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

# Exhibit 2

**Jessica Lewis**

**From:** Jessica Lewis
**Sent:** Friday, March 31, 2023 3:05 PM
**To:** Drimmer, Jon
**Subject:** RE:  Conflicts Issue

Jon,

Thank you for forwarding the engagement letter. As we discussed on our last phone call, Paul Hastings' involvement in the SuperCooler lawsuit is an active conflict. Your firm did not consult with The Coca-Cola Company beforehand, and no waiver was requested or granted. The Company expressly rejects any contention that an engagement letter from two years ago, on an unrelated issue and containing no specific client or subject matter information as to potential future conflicts, constitutes informed consent, consultation, or waiver under the applicable law and rules of professional conduct.

To be clear, the Company does not consent and has never consented to your firm pursuing a purported nine-figure lawsuit against the Company, its current client, on behalf of SuperCooler.  This is supported by the Rules Regulating the Florida Bar.

Please confirm in writing by April 4 that Paul Hastings will withdraw from the SuperCooler case. If Paul Hastings will not withdraw, the Company will file a motion with the Court to disqualify Mr. Kats, Mr. Wheatley, and Paul Hastings. The Motion will detail how we arrived at this conflict situation and the lack of notice and care that was taken in this matter.  We are extremely disappointed that Paul Hastings has put the Company in this position.

Sincerely,

Jessica



**Jessica Lewis**

Senior Legal Counsel
Head of Litigation

The Coca-Cola Company
One Coca-Cola Plaza
Atlanta, GA 30313

jeslewis@coca-cola.com
T (404) 772-7564

Classified - Confidential

**From:** Drimmer, Jon
**Sent:** Tuesday, March 28, 2023 5:31 PM
**To:** Jessica Lewis <jeslewis@coca-cola.com>
**Subject:** RE: [EXT] Conflicts Issue

Jessica, the engagement letter is attached, per your request.

1

**From:** Drimmer, Jon <jondrimmer@paulhastings.com>
**Sent:** Tuesday, March 28, 2023 5:06 PM
**To:** Jessica Lewis <jeslewis@coca-cola.com>
**Subject:** Re: [EXT] Conflicts Issue

Have a minute to discuss?

Sent from my iPhone


> On Mar 28, 2023, at 4:50 PM, Jessica Lewis <jeslewis@coca-cola.com> wrote:


### --- External Email ---

Hi Jon.  We learned late yesterday that Paul Hastings has lateraled two attorneys from Cahill, Gordon & Reindel, Vitaliy Kats and Michael Wheatley.  Mr. Kats and Mr. Wheatley are currently representing a client in a matter that is adverse to The Coca-Cola Company (SuperCooler Technologies Inc. v. The Coca-Cola Company, Case No. 6:23-cv-00187 (M.D. Fla.)).

We learned today that both Mr. Kats and Mr. Wheatley have filed a Notice of Change of Law Firm Affiliation and are on the docket for the SuperCooler matter.  As you know, Paul Hastings is actively representing TCCC in a number of matters and is essential to us in those matters.  We consider Paul Hastings involvement in the SuperCooler lawsuit an active conflict where no waiver has been requested or granted.  We ask that Paul Hastings withdraw from this matter and that Mr. Kats and Mr. Wheatly withdraw immediately.

Sincerely,

Jessica

<image001.png>


Classified - Confidential

---

CONFIDENTIALITY NOTICE
NOTICE: This message is intended for the use of the individual or entity to which it is addressed and may contain information that is confidential, privileged and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any printing, copying, dissemination, distribution, disclosure or forwarding of this communication is strictly prohibited. If you have received this communication in error, please contact the sender immediately and delete it from your system. Thank You.

*******************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

# Exhibit 3

# PAUL
# HASTINGS

March 30, 2021

Derek J. Gilliam
Corporate Counsel – Labor & Employment
The Coca-Cola Company
One Coca-Cola Plaza
Atlanta, GA 30313

Re:     Engagement Letter

Dear Derek:

We are delighted that The Coca-Cola Company ("Client") has selected Paul Hastings LLP (the "Firm") to represent you in connection with human rights advice regarding the DRC. This letter and the attached Terms of Retention set forth the terms of our engagement for this matter and, unless we agree otherwise in writing, any additional matters that we agree to handle on your behalf.

*Scope of Services.* The scope of the services we have agreed to provide is limited to the specific matter described above (and any additional matters that we agree to handle). We will endeavor to keep you informed of the progress of your matters and respond to your inquiries. You agree to provide us with complete and accurate information and timely apprise us of developments that may affect our representation of you. Unless otherwise agreed in writing, our services will not include any business, investment, tax, insurance or accounting advice, any investigation into the character or credit status of persons or entities with whom you do business or engage, any litigation or appeal, any evaluation of whether insurance is available to you, whether your matter should be tendered to any insurance carrier, or whether you may have claims against any third party or the validity of any such claims.

*Fees and Expenses.* We typically bill for our services and expenses on a monthly basis and expect prompt payment. I will have primary responsibility for our services in this matter. My current rate is $1,400/hour, although we may use the services of other attorneys, paralegals or other personnel when appropriate which will be charged at the hourly rates for such individuals. The current hourly rates of our attorneys range from $680 to $1,675. For 2021, we will apply a ten percent (10%) discount to our fees. Our hourly rates are based on experience, training, specialty, and other relevant factors. We periodically revise these rates based on various factors including market information. We also will invoice you for ancillary services and expenses. Please refer to the section on Billing and Expenses in the attached Terms of Retention for additional details.

*Fee Disputes and Arbitration.* We encourage our clients to raise questions promptly about any billing matters. You agree to review our statements and raise any questions or concerns within 30 days of receipt. If you object to a portion of the charges on a statement, you agree to pay the remaining charges promptly, which will not constitute a waiver of your objection. If there is a disagreement about a billing issue, we will work with you to try to reach an amicable resolution. If we are unable to reach a resolution, you agree to have the dispute resolved exclusively by entering into arbitration before the District of Columbia Bar Attorney Client Arbitration Board ("ACAB"), in accordance with the rules established by the ACAB. Information about the arbitration process and a copy of the ACAB rules are available online at www.dcbar.org and from the ACAB staff by calling (202) 737-4700, ext. 3216. The ACAB provides counseling to clients regarding its rules and the effects of agreeing to arbitration. We encourage you to

PAUL
HASTINGS

Derek J. Gilliam
March 30, 2021
Page 2

consult with the ACAB and independent counsel regarding the implications of agreeing to arbitrate fee disputes.

*Confirmation of Agreement.*  To memorialize our understanding, please sign and return the enclosed copy of this letter.  Your signature confirms that this letter, including the attached Terms of Retention, accurately sets forth all of the terms of our engagement and is approved and accepted by Client. However, please note that your continuing to work with us on this matter will constitute acceptance of the terms set forth herein.

We are pleased to have the opportunity to represent you.

Sincerely,

Jonathan C. Drimmer
of PAUL HASTINGS LLP

Agreed to this 2nd day of April , 2021 . By: Derek J. Gilliam

Derek J. Gilliam, Corporate Counsel – Labor & Employment
Authorized to sign on behalf of The Coca-Cola Company

PAUL
HASTINGS

Derek J. Gilliam
March 30, 2021
Page 3

## Paul Hastings LLP Terms of Retention

The following provisions will apply to the relationship between Paul Hastings LLP, including its affiliates (the "Firm" and "we"), and the Client(s) ("you" and "your"), as identified in the accompanying letter agreement:

1. **Client Identity.** The Firm agrees to represent you and only you in connection with the matters for which we are engaged and, unless otherwise agreed in the attached letter or in a later writing, we will not represent or form an attorney-client relationship with any person or entity related to you, including (i) any officer, director, employee or agent; (ii) any parent, subsidiary or other affiliate; (iii) any entity of which you are a partner or member; (iv) any shareholders, partners, members, or other related interests; (v) any fund or account that you manage; or (vi) any of your insurers (when we represent a party in defending a claim covered by insurance, we represent the insured, not the insurer, even though we may be approved, selected or paid by the insurer).

2. **No Guarantee of Outcome.** We do not and cannot guarantee the outcome in any matter or the effectiveness of any recommended course of action. Any statements in this regard are expressions of opinion, and are not promises or guarantees.

3. **Non-Binding Estimates.** The Firm understands the importance of the budgeting process, and we will accommodate reasonable requests to prepare budgets and estimates. However, budgets and estimates are by their nature inexact and shall not be binding.

4. **Billing and Expenses.** The Firm will invoice you for ancillary services and expenses such as photocopying, scanning, messenger and courier services, court reporter services, filing fees, online or computerized research, litigation support service, document processing, facsimile, postage, printing, secretarial or administrative overtime, travel related expenses, parking and similar expenses, whether internal or paid to third parties. Charges for ancillary services are typically based on the Firm's out-of-pocket cost, a consideration of the market price and customary charges of other providers, or some combination of these factors, and may exceed the actual cost of such services. If a matter requires the services of a third party (*e.g.*, experts, consultants, mediators, e-discovery vendors), you agree to pay such third parties directly whether they are retained by the Firm on your behalf or by you directly. However, if the Firm assumes an obligation or makes payment on your behalf, you agree to promptly reimburse the Firm and indemnify the Firm for its payment and other obligations and liabilities related thereto. If the matter necessitates a substantial expenditure on your behalf, we may require that you pay the expense directly or that you pay the funds to the Firm before the expense is incurred or paid. All payments may be sent directly to our lockbox at Paul Hastings LLP, P.O. Box 894803, Los Angeles, CA 90189-4803, or via ACH or wire in accordance with the instructions provided on each billing statement. The Firm reserves the right to charge a late fee of 1% per month on all sums that are not paid within 60 days of presentation of our billing statement.

5. **Advance Payments.** The Firm may require an advance payment before working on this matter or any other matter that we agree to handle. Unless otherwise agreed, all advance payments shall be deemed to be advances on attorneys' fees and shall not constitute advances for costs. Where permitted, the Firm may maintain such advance fee payments in a general account. The amount of this advance payment does not represent our estimate of the total charges that may be incurred, but

PAUL
HASTINGS

Derek J. Gilliam
March 30, 2021
Page 4

is only a partial advance payment. You understand that the amount of work that we may need to perform may exceed our current expectations. The Firm reserves its right, as a condition to the provision of further services, to require an advance payment, if none has previously been provided, or an additional advance payment. Any charges not covered by the advance payment are due and payable directly by you on receipt of each monthly statement. At the conclusion of our representation, any portion of any advance payment which has not been used to pay outstanding invoices will be refunded to you.

With respect to litigation matters, arbitration and other adversarial proceedings, such matters are often time-consuming and expensive. We may require an advance payment in an amount to be determined based on an estimate of the magnitude of service and expenditures that will likely be involved. If you fail to provide this additional advance payment within 30 days after it is requested by us, you agree that we have the right to discontinue our representation to the extent legally permissible.

6. **Our Firm Privilege.** From time to time issues arise that raise questions concerning our professional duties. You agree that attorneys and staff working on your matter may consult with lawyers at the Firm or other counsel with respect to professional responsibilities, ethical obligations and related matters. You further agree that those consultations will be protected by the Firm's own attorney-client privilege and will not be part of your client file.

7. **Confidentiality of Client Information.** The Firm takes seriously its obligation to protect the confidentiality of client information. It is possible that through the representation of a client, we have or will obtain information that may be of interest or material to another client, but which our ethical obligations prevent us from sharing. You agree that the Firm is not obligated to disclose to you or use on your behalf any confidential information obtained through representing other clients. You also agree that you will not assert that the Firm has breached any duty to you or has any conflict of interest based on the possession of such information.

8. **Waiver of Prospective Conflicts.** Because we represent a large number of clients in a wide variety of legal matters, it is possible that we will be asked to represent a client whose interests are actually or potentially adverse to your interests in matters that may include, without limitation, mergers, acquisitions, financing, restructuring, bankruptcy, litigation, or administrative, rulemaking or regulatory proceedings. We may also be asked to serve a subpoena or take other discovery of you on behalf of another client. In particular, the Firm has established relationships with clients engaged in a business in your industry or a related industry and may have represented such clients in connection with various aspects of their business, including, without limitation, mergers, acquisitions, financing, restructuring, bankruptcy, litigation, or administrative, rulemaking or regulatory proceedings.

In any of these circumstances, we agree that we will not undertake any such representation if it is substantially related to a matter in which we have represented you. If the other representation is not substantially related to a matter in which we have represented you, however, then you agree to our accepting such representation and you waive any resulting actual or potential conflicts of interests that may arise, provided that (1) our effective representation of you and the discharge of our professional responsibilities to you are not prejudiced by our undertaking the other representation; (2) we protect your confidential information and implement ethical walls as necessary to screen the

PAUL
HASTINGS

Derek J. Gilliam
March 30, 2021
Page 5

lawyers working on the other representation from involvement in your matters, and vice versa; and (3) the other client has consented to and waived potential and actual conflicts of interest.

In deciding whether to waive the conflicts described herein, you should consider the potential risks (*e.g.*, that the Firm could be less zealous in our representation of you, favor the interests of another client over yours, or use your confidential information in a manner adverse to your interests). We would not accept a representation if we believed these issues posed a material risk, because we understand our role as advocates in particular matters, we take our obligations to each of our clients seriously, and we have established policies and procedures to protect our clients. Nevertheless, these are issues that you should consider for yourself and on which we encourage you to seek advice from independent counsel. By signing this letter, you consent to and waive the conflicts set forth herein and agree that for purposes of this waiver, your signature binds you and all subsidiaries, affiliates, and agents you are authorized to bind. You also agree that you have been advised to seek advice from independent counsel with respect to this waiver, and have been given the opportunity to do so.

If for any reason, your consent and waiver of potential conflicts is not effective in specific circumstances, you consent to our resignation from our representation of you and agree to support a motion, if filed by us, to withdraw from our representation of you if resignation at that time is otherwise permissible under applicable professional rules. In that case, you would need to engage, at your expense, new counsel to represent your interests.

9.  **Client and Firm Records.** During the course of the engagement, the Firm will maintain a file that may include correspondence, agreements, filings, disclosures, pleadings, transcripts, exhibits, evidence, reports, and other items related to our engagement (the "Client File"). You are entitled to obtain the Client File upon providing reasonable notice, subject to the Firm's right to maintain a copy, at our expense. Unless precluded by applicable law including rules of professional responsibility, you agree that the Firm's accounting and administrative records, time and expense records, internal e-mail communications, attorney work product and other materials prepared for internal use are not part of the Client File and shall be and remain the property of the Firm, and that you have no right to such materials. If we agree to transfer, destroy or return information to you in a manner that is not in accordance with these Terms of Retention or our general internal policies or practices, you agree to pay the additional cost of doing so at an hourly rate of $250.

You agree that, upon request, you will take possession of any and all original contracts, wills, stock certificates, and other such important documents that may be in the Client File, and that we shall have no further responsibility with regard to such documents. Generally, the Firm keeps Client Files for at least seven (7) years after the conclusion of an engagement. You agree that, unless you instruct us otherwise in writing, we may destroy the Client File after seven (7) years from the date on which time was last billed to the matter.

10. **Conclusion of Representation.** You have the right to terminate our services at any time, subject to court approval if required. Likewise, subject to applicable ethical rules, the Firm has the right to terminate its representation of you if you fail to pay our invoices in a timely manner, your lack of cooperation renders it unreasonably difficult to effectively represent you, continued representation would be unlawful or unethical, or for any other reason. Upon conclusion of our representation, except as expressly agreed in writing, the Firm shall have no further obligation to advise you with

PAUL
HASTINGS

Derek J. Gilliam
March 30, 2021
Page 6

respect to any issues relating to any matter for which the Firm was engaged, including monitoring dockets or calendars, filing documents (including judgments, liens and recording abstracts), or informing you of deadlines, changes in the law, or other developments.  The fact that we may inform you of developments in the law that may be of interest to you is a courtesy and will not create or continue an attorney-client relationship.

Our engagement on any specific matter will conclude at the earlier of the completion of our work on such matter or upon termination of our representation by you or the Firm.  In the event that Firm attorneys have performed no work on your behalf for a period of six (6) consecutive months, you agree that our attorney-client relationship is terminated as of the last date our attorneys performed legal services on your behalf, unless otherwise agreed in writing.  However, you will remain obligated to pay for services rendered and costs or expenses paid or incurred on your behalf before the termination or which are reasonably necessary thereafter.  You also agree to cooperate with us by performing any acts necessary to effect termination, including executing and filing any documents necessary to relieve us from further obligations (e.g., substitution of attorney).

11. **Consent to Electronic Communications and Media.**  In order to maximize our efficiency and facilitate communication and collaboration with you, we use a variety of electronic communication methods, devices and media including, but not limited to, email, document transfer by computer, mobile phones, tablets, cloud storage and such other devices and media which may develop in the future.  The Firm supports email encryption in transit using industry standard TLS encryption for both inbound and outbound email messages.  If you prefer that emails between our organizations are subject to mandatory encryption, we can work with your email administrator to establish such a protocol.  The Firm endeavors to use reasonable security measures consistent with applicable law, including our ethical obligations, and appropriate to the sensitivity of the information.  However, no electronic medium is without risk.  Your acceptance of these Terms of Retention constitutes consent to the use of these electronic communication devices and media, and acceptance of the risks that they entail.

12. **Data Protection – Global.**  We will collect, process, store and transfer all personally identifying information disclosed to us by or on behalf of you in compliance with relevant data protection laws and regulations and for the purposes set out in our Global Privacy Statement (available at www.paulhastings.com) or as otherwise permitted or required by applicable law.  You acknowledge and agree that we may collect, process, store and transfer personally identifying information within our Firm at any of our offices and affiliates around the globe and to agents and third parties retained by us, together with their successors and assigns, in accordance with relevant data protection laws and regulations as set out in our Global Privacy Statement.  You also agree to notify the Firm in writing if you are subject to any other law that requires special treatment of data.  After receiving such notification, we will discuss with you how we might assist you in complying with such law.

PAUL
HASTINGS

Derek J. Gilliam
March 30, 2021
Page 7

13. **Data Protection – EEA and Switzerland.**

(a)  Unless otherwise expressly provided, when our services require us to collect or process Personal Data[1] (1) in the European Economic Area (EEA) (which in this provision shall include the United Kingdom, regardless of "Brexit") or Switzerland or (2) belonging to a resident of the EEA or Switzerland, you (including, for purposes of this provision, any subsidiaries and affiliates) agree to the terms of this agreement with regard to the processing of that data.

(b)  The Firm treats all Personal Data received within or from the EEA or Switzerland or relating to persons located in those jurisdictions in accordance with GDPR and the legislation implementing GDPR in EEA member states (or, in the case of Switzerland, with its equivalent legislation).

(c)  Taking into account the state of the art, the costs of implementation and the nature, scope, context and purposes of processing as well as the risk of varying likelihood and severity for the rights and freedoms of natural persons, we will, in relation to Personal Data, implement appropriate technical and organizational measures to ensure a level of security appropriate to that risk, including, as appropriate, the measures referred to in Article 32(1) of GDPR.

(d)  We will act only on your instructions in relation to any Personal Data that we process on your behalf or at your direction, including, with regard to transfers of Personal Data, to a third country or an international organization, unless otherwise required by law.  In such cases, we will inform you of such legal requirement before processing unless disclosure is prohibited under applicable law.  We may use any Personal Data (including Sensitive Personal Data) that we Process on your behalf primarily for the provision of legal services to you and for related purposes including: (1) updating and enhancing client records and improving our ability to provide you with legal services; (2) statutory returns; and (3) legal and regulatory compliance.

In relation to Personal Data transferred to us by you or at your direction, you agree that we may transfer Personal Data (including Sensitive Personal Data) outside of the EEA or Switzerland to the United States or other locations around the world in which we have offices or business operations.  Paul Hastings LLP has joined the Privacy Shield Framework by self-certifying to the Department of Commerce and publicly committing to comply with the Privacy Shield Framework's requirements.  The Firm also has executed Data Transfer Agreements, which include the Standard Contractual Clauses, approved under Directive 95/46/EC (as it may be amended or modified), between its EEA offices and each of our global offices outside of the EEA, as well as with all sub-processors where applicable.  You also agree that we may provide Personal Data (including Sensitive Personal Data) to third parties as required to fulfill our engagement (e.g., to other professional advisers and expert witnesses), regardless of where they are located.  You can

---

[1] "Personal Data" and any other defined terms that appear in this provision that are not expressly defined shall have the meaning provided in the General Data Protection Regulation ("GDPR"), (EU) 2016/679.  References to "Personal Data" and other defined terms as they relate to Switzerland shall have the meanings ascribed to them in the Swiss Federal Data Protection Act, and references to "GDPR" in the context of Switzerland (i.e., to Personal Data processed or relating to persons in Switzerland) shall be understood to refer to that Act.

# PAUL
# HASTINGS

Derek J. Gilliam
March 30, 2021
Page 8

access our Privacy Shield notice at:
https://www.privacyshield.gov/participant?id=a2zt0000000TOYRAA4Y.

(e)  In relation to Personal Data, where practicable, we will assist you, by using appropriate technical and organizational measures, in fulfilling your obligations as the Data Controller to respond to requests for exercising the data subject's rights laid down in GDPR, Articles 12-23.

(f)  For the purposes of vendors, suppliers, or other third parties we may engage as sub-processors of Personal Data:

   (i)  We will require those sub-processors to adhere to the requirements of Article 32 of the GDPR regarding the security of processing.

   (ii)  A list of sub-processors who support our operations and may process Personal Data is available on request or via our website at www.paulhastings.com/subprocessors. You consent to our use of these sub-processors and acknowledge that this list may be updated from time to time.  If you object to a sub-processor, we will work with you in good faith to address the objection.

   (iii)  In the event that we engage a new sub-processor specifically and principally for the purpose of supporting your matters, we will provide you advance notice and an opportunity to object.

(g)  Upon your request, and subject to and in accordance with applicable laws, we will delete or return to you all Personal Data.

(h)  We will notify you without undue delay if we become aware of any breach affecting your Personal Data, in an attempt to provide you with sufficient information to allow you to meet any obligations to report or inform data subjects or the appropriate Data Protection Authority of the Personal Information breach under applicable data protection laws.

14. **Market Abuse Directive.**  You agree to notify the Firm in writing if you are subject to the European Union's Market Abuse Directive 2003/6/EC (the "Directive") and the legislation implementing the Directive in EU member states, and require the Firm to maintain an insider list for your matter.  Upon such notice, we will prepare and maintain a list of those persons working for the Firm who have access to certain inside information by virtue of our representation of you.  If you have any questions relating to such list or any other issues, please contact the partner who signed the accompanying letter agreement.

15. **Related Proceedings and Matters.**  If, as a result of our representation of you, we are asked to respond to subpoenas or other discovery, provide testimony, or otherwise participate in a related proceeding or matter, you agree to compensate us for resulting costs, including, without limitation, compensation for our time at the hourly billing rate of the individuals involved.

16. **Indemnification in Third-Party Actions.**  In addition to any rights that we may have at common law or otherwise including, but not limited to, any right of contribution, you agree to indemnify and hold harmless the Firm and each current, former and future partner, associate, employee, or agent of the

PAUL
HASTINGS

Derek J. Gilliam
March 30, 2021
Page 9

Firm (the "Firm Indemnitees"), to the fullest extent permitted by law, including applicable rules of professional conduct and other regulations governing lawyers, from and against all claims, suits, proceedings, or investigations asserted by a third party related to, arising out of or in connection with our representation of you or, at your request, any of your affiliates ("Third-Party Claim").  Your obligation to indemnify the Firm Indemnitees against a Third-Party Claim shall include any resulting liabilities, damages, losses, fees, costs and expenses (including fees, costs and expenses of outside counsel to the Firm Indemnitees and compensation for the time spent by attorneys at the Firm in connection with defending such Third-Party Claim at the hourly billing rate for the particular individuals involved) (collectively, the "Losses").  You further agree to reimburse the Firm Indemnitees for all Losses as they are incurred in connection with investigating, preparing, pursuing or defending against any threatened or pending Third-Party Claim, whether or not such Firm Indemnitee is a formal party to any such Third-Party Claim.  The Firm shall have the right to control the defense of any Third-Party Claim including, but not limited to, the selection of defense counsel and determination of whether or not to enter into any settlement or consent to the entry of any judgment against the Firm Indemnitees.

Notwithstanding the foregoing, we agree that you will not be responsible for any Losses incurred by any Firm Indemnitee as a result of any Third-Party Claim if such Losses are determined in a final, non-appealable judgment by a court or other tribunal of competent jurisdiction to be the result of the professional malpractice, gross negligence or willful misconduct of the Firm Indemnitee seeking indemnification hereunder.  Nothing in this provision shall be interpreted to limit or exclude liability for our professional malpractice where prohibited by law or applicable ethical rules.

17. **Disclosure of Client Relationship.**  The Firm is honored to represent you and would like to identify you as a Firm client in public relations and other promotional materials.  By signing the accompanying letter agreement, you agree that the Firm can, without revealing any privileged or non-public information, disclose your name and the general nature of the representation for public relations and promotional purposes.

18. **Entire Agreement.**  Except for written or oral consents and waivers of actual or potential conflicts of interest, the accompanying letter agreement and these Terms of Retention supersede all other prior and contemporaneous written and oral agreements and understandings and contain the entire agreement between you and the Firm.  The accompanying letter agreement and these Terms of Retention may be modified only by subsequent written agreement between you and the Firm that expressly states that it is modifying the accompanying letter agreement and these Terms of Retention.  You acknowledge that no promises have been made to you other than those stated in the accompanying letter agreement and these Terms of Retention.

19. **Severability.**  If any section or portion of the accompanying letter agreement and these Terms of Retention is determined by any court or arbitrator to be illegal, invalid or unenforceable, such section or portion shall be deemed stricken and the remaining terms shall not be affected.

# Exhibit 4

**Jessica Lewis**

| | |
|---|---|
| **From:** | Pollack, Mark D. <markpollack@paulhastings.com> |
| **Sent:** | Friday, March 31, 2023 3:11 PM |
| **To:** | Jessica Lewis |
| **Subject:** | SuperCooler Matter |
| **Attachments:** | 48655-00002_Coca-Cola Company, The EL.pdf |

**ATTENTION:** This email was sent from outside the company. Do not click links or open files unless you know it is safe. Forward malicious emails to phish@coca-cola.com.

Dear Jessica:

I am the General Counsel of Paul Hastings and am writing in response to the below email you sent to my partner Jon Drimmer earlier this week.  I understand that, after receiving your email, Jon sent you the attached engagement letter dated March 30, 2021, counter-signed and accepted by Derek Gilliam of Coca-Cola's legal department on April 2, 2021, which letter set forth and appended the terms and conditions governing our relationship.  Contrary to your assertion below, the terms and conditions of our engagement letter expressly included an advance conflicts waiver, which we request of all new clients, and on which we specifically relied in accepting the opportunity to represent Coca-Cola.  That waiver authorizes Paul Hastings to undertake future engagements adverse to Coca-Cola provided the prospective engagement is not substantially related to any of the matters in which we have represented Coca-Cola and each of three enumerated conditions are satisfied.  Because each of the stated conditions are satisfied with respect to our representation of SuperCooler, there is no basis for your demand that the Firm immediately withdraw from further involvement in the matter.  Prior to undertaking the SuperCooler engagement, we evaluated the nature of the work performed for Coca-Cola and confidently determined that the matters at issue in the SuperCooler litigation are not substantially related to any of the work we have performed for Coca-Cola.  We likewise considered and concluded that our undertaking the SuperCooler engagement would not prejudice or impair our ability to continue to effectively represent Coca-Cola in unrelated matters by a separate team of lawyers.  Furthermore, consistent with the terms of the agreed waiver, we have timely taken steps to protect confidential information and, in that regard, have implemented ethical walls to screen all lawyers who have worked for Coca-Cola from any of those working for SuperCooler, and vice versa.  Lastly, we have obtained a reciprocal waiver from SuperCooler consenting to and waiving potential conflicts of interest.  Because we have proceeded in strict conformance with the terms of our engagement letter and the advance waiver contained therein to which Coca-Cola expressly agreed, we see no basis to withdraw from the SuperCooler engagement and reject your demand that we do so.

We are hopeful that Coca-Cola will re-evaluate its unwarranted demand that we immediately withdraw from our representation of SuperCooler and agree to abide by the consent and waiver it expressly agreed to in the attached engagement letter.  We remain willing to continue to provide service to Coca-Cola, provided of course that Coca-Cola desires that we do so and is willing to honor the waiver to which it agreed.  Our engagement letter further provides that if, for any reason your consent and waiver are ineffective in a specific circumstance, you consent to our resignation of our representation in a manner consistent with our professional obligations.  Although we hope to avoid doing so, if that is your preference we are prepared to resign from any pending engagements and work with you to ensure an orderly transition of such matters at no cost to Coca-Cola and in a manner that is fully consistent with our professional obligations.

Should you have any questions regarding the matters addressed herein, please direct them to my attention.


Very truly yours,

1

Mark Pollack



**Mark Pollack | General Counsel**
Paul Hastings LLP | 71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606 | Direct:
+1.312.499.6050 | Main: +1.312.499.6000 | Fax: +1.312.499.6150 |
markpollack@paulhastings.com | www.paulhastings.com

**From:** Jessica Lewis <jeslewis@coca-cola.com>
**Date:** March 28, 2023 at 4:50:31 PM EDT
**To:** "Drimmer, Jon" <jondrimmer@paulhastings.com>
**Subject: [EXT] Conflicts Issue**

## --- External Email ---

Hi Jon.  We learned late yesterday that Paul Hastings has lateraled two attorneys from Cahill, Gordon & Reindel, Vitaliy Kats and Michael Wheatley.  Mr. Kats and Mr. Wheatley are currently representing a client in a matter that is adverse to The Coca-Cola Company (SuperCooler Technologies Inc. v. The Coca-Cola Company, Case No. 6:23-cv-00187 (M.D. Fla.)).

We learned today that both Mr. Kats and Mr. Wheatley have filed a Notice of Change of Law Firm Affiliation and are on the docket for the SuperCooler matter.  As you know, Paul Hastings is actively representing TCCC in a number of matters and is essential to us in those matters.  We consider Paul Hastings involvement in the SuperCooler lawsuit an active conflict where no waiver has been requested or granted.  We ask that Paul Hastings withdraw from this matter and that Mr. Kats and Mr. Wheatly withdraw immediately.

Sincerely,

Jessica



**Jessica Lewis**                     The Coca-Cola Company      jeslewis@coca-cola.com
                                      One Coca-Cola Plaza        T (404) 772-7564
Senior Legal Counsel                  Atlanta, GA 30313
Head of Litigation

Classified - Confidential

CONFIDENTIALITY NOTICE
NOTICE: This message is intended for the use of the individual or entity to which it is addressed and may contain information that is confidential, privileged and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any printing, copying, dissemination, distribution, disclosure or forwarding of this communication is strictly prohibited. If you have received this communication in error, please contact the sender immediately and delete it from your system. Thank You.

*********************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

# Exhibit 5

**Jessica Lewis**

| | |
|---|---|
| **From:** | Pollack, Mark D. <markpollack@paulhastings.com> |
| **Sent:** | Tuesday, April 4, 2023 6:10 PM |
| **To:** | Monica Howard Douglas |
| **Cc:** | Jessica Lewis |
| **Subject:** | RE:  FW: Conflicts Issue |

**ATTENTION:** This email was sent from outside the company. Do not click links or open files unless you know it is safe. Forward malicious emails to phish@coca-cola.com.

Dear Monica—thank you for copying me on your note to Sherrese and K.  I wanted to respond on behalf of the Firm.  As an initial matter, I can assure you that we evaluated this circumstance with care to ensure that we fulfill all of our obligations to Coca-Cola under the governing ethical rules and applicable law.

For the reasons set forth in my email to Jessica last Friday, we believe that our role in the SuperCooler matter fully accords with the terms of the advance conflicts waiver granted by Coca-Cola in the engagement letter that governs our attorney-client relationship.  To the extent you or Jessica have questions regarding any of the steps we have taken as described in my earlier note, please direct them to my attention.

We remain hopeful that Coca-Cola will re-evaluate its demand that we withdraw from our representation of SuperCooler, which we continue to believe is unwarranted.

**From:** Monica Howard Douglas <mhowarddouglas@coca-cola.com>
**Sent:** Monday, April 3, 2023 3:32 PM
**To:** Whitner, William K. <kwhitner@paulhastings.com>; Smith, Sherrese M. <sherresesmith@paulhastings.com>
**Cc:** Pollack, Mark D. <markpollack@paulhastings.com>; Jessica Lewis <jeslewis@coca-cola.com>
**Subject:** [EXT] FW: Conflicts Issue

**--- External Email ---**

Some people who received this message don't often get email from mhowarddouglas@coca-cola.com. Learn why this is important

Sherrese & K,

My colleague, Jessica Lewis, forwarded the below message related to a conflicts situation that arose when two lawyers, Vitaliy Kats and Michael Wheatley from Cahill, Gordon & Reindel, joined Paul Hastings. While at Cahill, Mr. Kats and Mr. Wheatley represented SuperCooler in a lawsuit filed against Coca-Cola. We learned last week that Mr. Kats and Mr. Wheatley, now attorneys at Paul Hastings, intend to continue their representation of SuperCooler against Coca-Cola.

I wanted to make sure you were aware of this troubling issue and to share my extreme disappointment that the firm would even consider suing Coca-Cola at the same time that it is actively handling matters on our behalf.  As Jessica

notes, we were not consulted beforehand and no waiver of this conflict has been requested or granted. We are hopeful that Paul Hastings will carefully consider this matter and withdraw from its adverse representation against Coca-Cola.

Sincerely,

Monica

Monica Howard Douglas
SVP & General Counsel
The Coca-Cola Company
mhowarddouglas@coca-cola.com
(470) 925-9227


Begin forwarded message:

> **From:** Jessica Lewis <jeslewis@coca-cola.com>
> **Date:** March 31, 2023 at 3:04:54 PM EDT
> **To:** "Drimmer, Jon" <jondrimmer@paulhastings.com>
> **Subject: RE:  Conflicts Issue**
>
>
> Jon,
>
> Thank you for forwarding the engagement letter. As we discussed on our last phone call, Paul Hastings' involvement in the SuperCooler lawsuit is an active conflict. Your firm did not consult with The Coca-Cola Company beforehand, and no waiver was requested or granted. The Company expressly rejects any contention that an engagement letter from two years ago, on an unrelated issue and containing no specific client or subject matter information as to potential future conflicts, constitutes informed consent, consultation, or waiver under the applicable law and rules of professional conduct.
>
> To be clear, the Company does not consent and has never consented to your firm pursuing a purported nine-figure lawsuit against the Company, its current client, on behalf of SuperCooler.  This is supported by the Rules Regulating the Florida Bar.
>
> Please confirm in writing by April 4 that Paul Hastings will withdraw from the SuperCooler case. If Paul Hastings will not withdraw, the Company will file a motion with the Court to disqualify Mr. Kats, Mr. Wheatley, and Paul Hastings. The Motion will detail how we arrived at this conflict situation and the lack of notice and care that was taken in this matter.  We are extremely disappointed that Paul Hastings has put the Company in this position.
>
> Sincerely,
>
> Jessica



THE *Coca-Cola* COMPANY

**Jessica Lewis**

Senior Legal Counsel
Head of Litigation

The Coca-Cola Company        jeslewis@coca-cola.com
One Coca-Cola Plaza          T (404) 772-7564
Atlanta, GA 30313

Classified - Confidential

**From:** Drimmer, Jon
**Sent:** Tuesday, March 28, 2023 5:31 PM
**To:** Jessica Lewis <jeslewis@coca-cola.com>
**Subject:** RE: [EXT] Conflicts Issue

Jessica, the engagement letter is attached, per your request.

**From:** Drimmer, Jon <jondrimmer@paulhastings.com>
**Sent:** Tuesday, March 28, 2023 5:06 PM
**To:** Jessica Lewis <jeslewis@coca-cola.com>
**Subject:** Re: [EXT] Conflicts Issue

Have a minute to discuss?

Sent from my iPhone

On Mar 28, 2023, at 4:50 PM, Jessica Lewis <jeslewis@coca-cola.com> wrote:

### --- External Email ---

Hi Jon.  We learned late yesterday that Paul Hastings has lateraled two attorneys from
Cahill, Gordon & Reindel, Vitaliy Kats and Michael Wheatley.  Mr. Kats and Mr. Wheatley
are currently representing a client in a matter that is adverse to The Coca-Cola Company
(SuperCooler Technologies Inc. v. The Coca-Cola Company, Case No. 6:23-cv-00187
(M.D. Fla.)).

We learned today that both Mr. Kats and Mr. Wheatley have filed a Notice of Change of
Law Firm Affiliation and are on the docket for the SuperCooler matter.  As you know,
Paul Hastings is actively representing TCCC in a number of matters and is essential to us
in those matters.  We consider Paul Hastings involvement in the SuperCooler lawsuit an
active conflict where no waiver has been requested or granted.  We ask that Paul
Hastings withdraw from this matter and that Mr. Kats and Mr. Wheatly withdraw
immediately.

Sincerely,

Jessica

<image001.png>

Classified - Confidential

CONFIDENTIALITY NOTICE
NOTICE: This message is intended for the use of the individual or entity to which it is addressed and may contain information that is confidential, privileged and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any printing, copying, dissemination, distribution, disclosure or forwarding of this communication is strictly prohibited. If you have received this communication in error, please contact the sender immediately and delete it from your system. Thank You.

*************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

CONFIDENTIALITY NOTICE
NOTICE: This message is intended for the use of the individual or entity to which it is addressed and may contain information that is confidential, privileged and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any printing, copying, dissemination, distribution, disclosure or forwarding of this communication is strictly prohibited. If you have received this communication in error, please contact the sender immediately and delete it from your system. Thank You.

*************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

# Exhibit 6

**Garretson, John D. (SHB)**

| | |
|---|---|
| **From:** | Kats, Vitaliy <vitaliykats@paulhastings.com> |
| **Sent:** | Monday, March 27, 2023 3:07 PM |
| **To:** | Garretson, John D. (SHB); Webb, Trent (SHB); Clement, Anitra (SHB); Murray, Emma (SHB) |
| **Cc:** | Bondi, Bradley J.; Pade, Jeff A.; paul@mcintyrefirm.com; Wheatley, Michael D. |
| **Subject:** | SuperCooler v. Coca-Cola - Notice of Law Firm Change and PHV Motion |

**EXTERNAL**

John:

I am writing to let you know that Michael Wheatley and I are now at Paul Hastings.  Our contact information on ECF should already have been updated, and we will file a Notice of Change of Law Firm Affiliation later today.  We plan to continue working on this matter, with Brad as lead counsel at Cahill.

I am also writing to ask if you would oppose a separate motion for *pro hac vice* admission by Jeff Pade from Paul Hastings (cc'ed).  Please let me know as soon as possible.

---



**Vitaliy Kats | Associate**
Paul Hastings LLP | 2050 M Street NW, Washington, DC 20036 | Direct: +1.202.551.1703 | Main: +1.202.551.1700 | Fax: +1.202.551.0203 | vitaliykats@paulhastings.com | www.paulhastings.com

*********************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

# Exhibit 7

**Garretson, John D. (SHB)**

---

| | |
|---|---|
| **From:** | Garretson, John D. (SHB) |
| **Sent:** | Monday, March 27, 2023 8:26 PM |
| **To:** | Kats, Vitaliy |
| **Cc:** | Webb, Trent (SHB); Clement, Anitra (SHB); Murray, Emma (SHB); Bondi, Bradley J.; Pade, Jeff A.; Paul@mcintyrefirm.com; Wheatley, Michael D. |
| **Subject:** | Re: SuperCooler v. Coca-Cola - Notice of Law Firm Change and PHV Motion |

Vitaliy,

Thanks for reaching out. We are consulting with our client on the pro hac/representation question. We understand there may be an issue regarding Paul Hastings, and I am not authorized to consent at this time. I should know more tomorrow.

Thanks,
John

On Mar 27, 2023, at 3:07 PM, Kats, Vitaliy <vitaliykats@paulhastings.com> wrote:

**EXTERNAL**

John:

I am writing to let you know that Michael Wheatley and I are now at Paul Hastings.  Our contact information on ECF should already have been updated, and we will file a Notice of Change of Law Firm Affiliation later today.  We plan to continue working on this matter, with Brad as lead counsel at Cahill.

I am also writing to ask if you would oppose a separate motion for *pro hac vice* admission by Jeff Pade from Paul Hastings (cc'ed).  Please let me know as soon as possible.

---



**Vitaliy Kats | Associate**
Paul Hastings LLP | 2050 M Street NW, Washington, DC 20036 | Direct: +1.202
|    Main: +1.202.551.1700 | Fax: +1.202.551.0203 | vitaliykats@paulhastings
www.paulhastings.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

# Exhibit 8



**Portfolio Media. Inc.** | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Paul Hastings Adds Cahill Gordon Atty To White Collar Group

By **Jack Rodgers**

Law360 (April 3, 2023, 1:58 PM EDT) -- Paul Hastings LLP has tapped the former white collar and government investigations group chair from Cahill Gordon & Reindel LLP to be co-chair of its investigations and white collar defense practice, the firm announced Monday.

Brad Bondi is also joining as a litigation partner and will be based in the firm's Washington, D.C., office. He said in a statement that Paul Hastings' continued growth hadn't gone unnoticed to his industry colleagues and that he was excited to join the firm.

Bondi's practice focuses on representing corporations, financial institutions, boards of directors, special committees and other clients in civil and criminal securities and financial law investigations, the firm said. For the past eight years he has been a partner at Cahill Gordon and leader of its white collar and government investigations group, according to his LinkedIn profile.



Brad Bondi

His other work involves counseling clients on corporate governance issues, white collar criminal defense and U.S. Securities and Exchange Commission investigations. To assist his clients, Bondi drew on his experience from having worked as an SEC counsel to two former commissioners. While at the SEC, Bondi handled enforcement actions and regulatory rulemaking, the firm said.

In an email to Law360 Pulse on Monday, Bondi said that there was "undeniable, unrivaled momentum at Paul Hastings," and that he was impressed with the firm's talent and diverse range of practice groups.

"There is an entrepreneurial spirit and energy at Paul Hastings that I knew would be a good fit for me and for my clients," he said. "The firm's investigations and white collar defense practice, which includes SEC enforcement in particular, is an exceptional group that I look forward to helping direct and co-lead."

Bondi has been featured by Law360 as an **MVP** for his work in civil and criminal white collar law disputes. A Georgetown University Law Center graduate, Bondi spent several years in private practice, working for Williams & Connolly LLP and Kirkland & Ellis LLP, before moving to a government position in 2009 with the Financial Crisis Inquiry Commission, according to his LinkedIn profile.

Before joining Cahill Gordon, Bondi worked as a partner and led the securities enforcement and investigations practice at Cadwalader Wickersham & Taft LLP, according to his LinkedIn profile.

Bondi said he most enjoyed helping convince the government of his clients' innocence, or to close an investigation and dismiss lawsuits against them.

"When a company or individual is faced with a [U.S. Department of Justice] or SEC investigation or a significant lawsuit, it can be an existential threat to the client's business, reputation and livelihood," he said. "It is an important responsibility that my team and I take very seriously."

Frank Lopez, Paul Hastings' chairman, said in a statement that Bondi's practice was nationally recognized in the white collar and investigations space.

"His public and private sector experience augments our premier team's ability to advise clients in their most critical disputes and important matters," he said.

In addition to his more than 20 years of experience working on white collar issues, Bondi has also taught at the college level, lecturing on issues related to securities regulation, according to his LinkedIn profile.

He has more than 14 years of experience working as an adjunct professor at both George Mason University's Antonin Scalia Law School and Georgetown University Law Center, and previously was an adjunct professor at Catholic University of America's Columbus School of Law. Bondi additionally works as a part-time visiting clinical professor at Yale Law School, according to his LinkedIn profile.

--Editing by Lakshna Mehta.

---

All Content © 2003-2023, Portfolio Media, Inc.